IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**FREDERICK PIGRAM,**
**#M04287,**

           Plaintiff,

v.

**KALIN BRIDGES,**
**ANDREW BENNETT,**
**JOEL HEPP,**
**ANGIE WALTER,**[1]
**CODY MIFFLIN, and**
**GAGE MARTIN,**

           Defendants.

Case No. 22-cv-02080-SPM

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a motion for partial summary judgment on the issue of exhaustion filed by Defendants Bennett, Walter, Bridges, and Hepp. (Doc. 36). Plaintiff Pigram filed a response in opposition. (Doc. 44). For the following reasons, the motion is granted in part and denied in part. Also before this Court is a motion for sanctions filed by Plaintiff Pigram. (Doc. 63). The motion is denied.

## BACKGROUND

Plaintiff Frederick Pigram, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center ("Menard"), initiated this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Plaintiff claims that on November 2, 2021, he was served food that was contaminated with rodent remains. (Doc. 9). After ingesting the

---

[1] The Clerk of Court is **DIRECTED** to correct Defendants' names on the docket as follows: Kalin Bridges ("L.T. Bridges"), Andrew Bennett ("L.T. Bennette"), Joel Hepp ("SGT Hepp"), and Angie Walter ("Angie Walters"). (*See* Doc. 36).

rodent parts, Plaintiff asserts that he was not provided access to crisis counseling or proper medical care. From November 2 until November 5, 2021, Plaintiff experienced stomach pains and diarrhea. Because he did not receive medical treatment and continued to suffer adverse symptoms, he refused to eat for three days out of fear that he would suffer further injury and be again served contaminated food. Following review of the Complaint pursuant to Section 1915A, Plaintiff is currently proceeding on the following claims.

> **Count 1:** Eighth Amendment deliberate indifference claim against Defendants Bridges, Bennett, Hepp, Walter, Mifflin, and Martin[2] for subjecting Plaintiff to unsanitary conditions of confinement at Menard by serving food trays contaminated with rodent(s) on November 2, 2021.
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Defendants Hepp, Bennett, Bridges, Walter, Mifflin, and Martin for refusing Plaintiff's requests for medical care and/or crisis counseling after he ingested portions of a rodent and became ill on November 2, 2021.
>
> **Count 3:** Eighth Amendment claim against Defendants Bridges, Bennett, Hepp, Walter, Mifflin, and Martin for denying Plaintiff access to a nutritionally adequate diet for three days on November 2-5, 2021, by failing to address his ongoing complaints about food contamination while he was sick from ingesting a rodent on November 2, 2021.

(Doc. 12).

Currently before the Court is a motion for partial summary judgment filed by Defendants Bennett, Walter, Bridges, and Hepp. (Doc. 36). In the motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies as to Counts 1 and 3. They state that the only relevant grievance at issue in this case is Grievance #295-11-21, dated November 18, 2021. Defendants do not refute that Plaintiff followed the proper processes and that this grievance was submitted and appealed in accordance with grievance procedure. Rather, they argue that the grievance does meet the exhaustion requirements because the grievance does contain enough factual details regarding their involvement in serving Plaintiff contaminated food (Count 1) and denying him access to a

---

[2] Mifflin was formerly identified as John Doe 2 and Martin was formerly identified as John Doe 3 in the Complaint. (Doc. 48). John Doe 1 and Kitchen Supervisor John Doe have been dismissed without prejudice. (Doc. 48, 62).

nutritionally adequate diet from November 2 to November 5, 2021 (Count 3). They contend that Plaintiff has failed to exhaust his allegations against them in Counts 1 and 3 because he has not sufficiently named or described them in the grievance to allow for meaningful review of their conduct.

In response, Plaintiff first argues that Grievance #295-11-21 does in fact include enough factual details to place prison officials on notice of his ongoing complaints and serves to exhaust Counts 1 and 3 against Bridges, Bennett, Walter, and Hepp. (Doc. 44, p. 6-8). Second, Plaintiff asserts that he is only required to exhaust available administrative remedies and that the grievance process at Menard was unavailable to him. He states that in addition to submitting Grievance #295-11-21, "prior to and subsequent to November 18, 2021," he filed four other grievances pertaining to the events alleged in the Complaint that went unanswered. (*Id.* at p. 2, 9).

**LEGAL STANDARDS**

I.    ***Summary Judgment***

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that the [movant is] entitled to judgment as a matter of law." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010) (citing FED. R. CIV. P. 56(c)). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

II.   ***Exhaustion of Administrative Remedies***

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

### III.     *Grievance Procedure*

As an inmate in the custody of IDOC, Plaintiff was required to follow the grievance procedures laid out in the Illinois Administrative Code ("grievance procedures"). 20 ILL. ADMIN. CODE § 504.800, *et seq*. Relevant to this case are the procedures pertaining to filing emergency grievances. In order to have a grievance addressed in an expedited manner, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO"), who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus, the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

## ANALYSIS

The only relevant grievance in the record is Grievance #295-11-21. (Doc. 9, p. 9-10). In this grievance, Plaintiff explains that on November 2, 2021, after already eating a majority of his dinner, he discovered rat parts in his food. He showed a correctional officer, who said that "he had

heard," and would tell the sergeant. Later, Defendant Sergeant Hepp came to Plaintiff's cell. Plaintiff showed him the piece of rat in his food, and Hepp responded that he already knew what was going on and had notified the lieutenant. Plaintiff asked for medical attention and a crisis team. Defendants Lieutenants Bennet and Bridges then came to Plaintiff's cell. He told the lieutenants about the rat parts found in his food and that he needed medical attention. The lieutenants told Plaintiff that he would be interviewed about the event and a medical technician would visit his cell. Defendant Nurse Angie Walter came to the gallery, and Plaintiff stopped her. Walter would not answer any of Plaintiff's questions and told Plaintiff that because the rat was cooked, he had nothing to worry about. Plaintiff requested that he be tested because rats carry diseases, and Walter denied his request. She did not provide Plaintiff any medical attention. Plaintiff grieves that he continued to seek medical care and to be seen by a crisis team member from the correctional officers walking by his cell, but they all ignored his requests. Plaintiff developed stomach pains and diarrhea. For the next three days, he refused to eat and continued to be denied medical care and an appointment with a crisis team member. In the grievance, Plaintiff expresses that the event was mentally disturbing and that he is concerned about his health. (*Id.*).

Plaintiff marked Grievance #295-11-21 as an emergency, and it was received by staff on November 19, 2021. (Doc. 9, p. 9). The CAO agreed that the emergency grievance should be expedited, and Grievance #295-11-21 was sent to the grievance office. (*Id.*). On November 23, 2021, the Grievance Officer recommended that the grievance be denied, and the CAO concurred in the finding. (Doc. 37, p. 3). Plaintiff appealed the grievance to the Administrative Review Board ("ARB"), and the ARB determined that the grievance was "mixed." (*Id.* at p. 2). The ARB affirmed that there was contamination of the food at Menard on November 2, 2021, but found that an investigation was underway. The ARB further noted that no medical request was received by the institution from Plaintiff and that treatment is at the discretion of the licensed medical provider. (*Id.*).

The Court finds that Grievance #295-11-21 cannot serve to exhaust Plaintiff's claims against Nurse Angie Walter in Count 1. And presuming that Plaintiff's assertions regarding the missing grievances are true and his administrative remedies were unavailable to him when he attempted to file four related grievances, these missing grievances also do not serve to exhaust his claims against Walter as alleged in Count 1.

In his response brief, Plaintiff states that it was Correctional Officer Cody Mifflin who "was responsible for providing prisoner[s] [in] the Plaintiff's assigned gallery their diets at around 3:30 p.m. on November 2, 2021." (Doc. 44, p. 3). Plaintiff argues that Mifflin was not identified in Grievance #295-11-21 or the missing grievances because Mifflin was not wearing a nametag during their interactions. (*Id.* at p. 3, 11). Plaintiff asserts that he identified Mifflin as "c/o" in all five grievances (Grievance #295-11-21 and the four missing grievances). He also contends that in the missing grievances he identified the "dietary kitchen supervisor, and correctional officers assigned to (8) gallery as the people that served his food from November 2 - to - November 5, 2021." (*Id.* at p. 4, 8, 9, 43). And finally, he describes Grievance #295-11-21 as complaining that "correctional staff assigned to his assigned gallery" served him a food tray that was contaminated with rodent parts. (*Id.* at p. 11). Thus, Plaintiff admits that he did not grieve, nor did he intend to grieve that Nurse Walter was involved in the delivery of the meal trays and serving him rodent-infested food. There is nothing in the grievance or missing grievances, as described by Plaintiff, that would notify prison officials that Walter was engaged in misconduct concerning Plaintiff's meal or that any member of medical staff was somehow involved in the service of contaminated food. Defendants have met their burden of proof in demonstrating that Plaintiff failed to exhaust his administrative remedies as to Count 1 against Walter.

The Court, however, agrees with Plaintiff that Grievance #295-11-21 meets the content requirements of the grievance procedures concerning his claims in Count 1 against correctional staff: Joel Hepp, Andrew Bennet, and Kalin Bridges. Although, Plaintiff does not directly accuse

Defendants as being responsible for the service of the contaminated food, this omission is not "fatal to the issue of exhaustion." *See Arce v. Wexford Health Services*, No. 18-cv-1348-SMY-GCS, 2019 WL 6702692, at *5 (Oct. 9, 2019). The grievance process is not intended to provide individual notice to each defendant who might be sued later, and a grievance is not "per se inadequate simply because an individual later sued was not named in the grievances." *Jones,* 549 U.S. at 219. Here, Plaintiff provided enough information to alert officials of the incident and that he was served contaminated food by correctional staff. He also includes details that Hepp, Bridges, and Bennet were somehow involved, as they all told Plaintiff that they knew that food containing rat parts had been served to the inmates. Thus, construing the evidence in Plaintiff's favor, Grievance #36-12-21 served its necessary function, and the motion for summary judgment is denied as to Count 1 against Hepp, Bennet, and Bridges. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones*, 549 U.S. at 219; *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013)).

For similar reasons, Grievance #295-11-21 serves to exhaust Count 3 against Bennett, Walter, Bridges, and Hepp. In the grievance, Plaintiff states that after consuming the rodent parts, he became sick. Because his concerns regarding his health were never addressed, and he did not receive medical and mental health care, he refused to eat for three days, effectively being denied a nutritionally adequate diet. In the grievance, he identifies Bennett, Walter, Bridges, and Hepp as either denying or ignoring his requests for medical care and describes them as dismissing his complaints. These allegations provide sufficient notice on the nature of Plaintiff's claims – that he was unable to eat due to the poor response to his health concerns and physical symptoms by Defendants and other correctional staff members. Accordingly, summary judgment as to Count 3 is denied.

## MOTION FOR SANCTIONS

Plaintiff has filed a motion seeking sanctions against Defendants for allowing the spoliation

of evidence. (Doc. 63). Plaintiff argues that despite early knowledge that a legal case might be initiated concerning the events on November 2, 2021, Defendants failed to properly preserve kitchen staff employee records. Defendants should be sanctioned because without these records, he was unable to identify Kitchen Supervisor John Doe, who was a key defendant in this case and eventually dismissed due to not being properly identified. Defendants oppose the motion. (Doc. 64).

Plaintiff asserts that as early as November 18, 2021, when he filed his emergency grievance, Menard was placed on notice of a potential civil claim for the violation of his constitutional rights as a result of food contamination. Less than a year later, on September 6, 2022, he initiated the current litigation naming the unknown kitchen supervisor as one of the defendants. On November 3, 2023, Defendants responded to discovery aimed at identifying Kitchen Supervisor John Doe, stating that the identity of the kitchen supervisor on November 2, 2021, could not be produced because records of kitchen employees are not retained past one year. (*See* Doc. 35, p. 2). On July 18, 2024, the Court entered an order dismissing Kitchen Supervisor John Doe without prejudice because this individual could not be identified. (Doc. 62). Plaintiff argues that monetary sanctions should be issued against Defendants for their failure to preserve records identifying Kitchen Supervisory John Doe. He states that the kitchen supervisor is the "main one responsible for [his] injuries," and he has been prejudiced by their willful and intentional avoidance in disclosing the identity of Kitchen Supervisory John Doe.

Plaintiff does not cite to a specific rule granting the Court the authority to issue monetary sanctions for spoliation of evidence. He only references the "Federal Rules of Civil Procedure 1 et seq." and "Fed. R. Crim. P. 1 et seq." (Doc. 63, p. 1, 4). The Court, therefore, will treat Plaintiff's motion as seeking sanctions under the Court's inherent authority.[3] "A district court may impose

---

[3] There is no evidence that the documents were electronically stored, and so the Court finds that FED. R. CIV. P. 37(e) is not applicable.

sanctions under its inherent authority where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Fuery v. City of Chi.,* 900 F. 3d 450, 463 (7th Cir. 2018) (internal citations and quotations omitted). When spoliation of evidence is asserted, bad faith "requires destruction for the purpose of hiding adverse information." *Bracey v. Grondin,* 712 F. 3d 1012, 1019 (7th Cir. 2013) (internal citations and quotations omitted).

Here, Plaintiff has offered no evidence beyond his own speculation that the kitchen employee records were destroyed willfully and in bad faith. The Court agrees with Plaintiff that it is appalling that an investigation into a shocking event such as contamination of food with rodent parts did not include the recording of employee names or the questioning of those involved in food storage and preparation that day. (Doc. 63, p. 5; Doc. 35-1, p. 1). But these facts show poor and negligent investigatory methods and record keeping, not bad faith. There is nothing in the record to refute Defendants' assertion that the kitchen staff employee shift records for November 2, 2021, were not retained in accordance with routine practice of keeping such records for only a year and that they were not aware of the lawsuit until July 5, 2023, when they were served with the Complaint. (Doc. 13). Because Plaintiff has failed to present facts demonstrating bad faith on the part of Defendants, the motion for sanctions is **DENIED**.

## DISPOSITION

For the reasons stated above, the motion for summary judgment filed by Defendants Bennett, Walter, Bridges, and Hepp is **GRANTED in part and DENIED in par**t. (Doc. 36). Count 1 is dismissed without prejudice as to Defendant Walter.

Plaintiff is now proceeding with the following claims:

**Count 1:** Eighth Amendment deliberate indifference claim against Defendants Bridges, Bennett, Hepp, Mifflin, and Martin for subjecting Plaintiff to unsanitary conditions of confinement at Menard by serving food trays contaminated with rodent(s) on November 2, 2021.

**Count 2:** Eighth Amendment deliberate indifference claim against Defendants Hepp, Bennett, Bridges, Walter, Mifflin, and Martin for refusing

                Plaintiff's requests for medical care and/or crisis counseling after he ingested portions of a rodent and became ill on November 2, 2021.

**Count 3:**    Eighth Amendment claim against Defendants Bridges, Bennett, Hepp, Walter, Mifflin, and Martin for denying Plaintiff access to a nutritionally adequate diet for three days on November 2-5, 2021, by failing to address his ongoing complaints about food contamination while he was sick from ingesting a rodent on November 2, 2021.

The motion for partial summary judgment filed by Defendants Martin and Mifflin (Doc. 65), the motion to dismiss Defendants Martin and Mifflin without prejudice filed by Plaintiff (Doc. 67), and the motion for entry of default filed by Plaintiff (Doc. 68) remain pending.

The motion for sanctions filed by Plaintiff Pigram is **DENIED**. (Doc. 63).

**IT IS SO ORDERED.**

**DATED: September 30, 2024**

                                            _s/Stephen P. McGlynn_
                                            **STEPHEN P. MCGLYNN**
                                            **United States District Judge**