**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**FREDRICK PIGRAM,**

**Plaintiff,**

**v.**

**KALIN BRIDGES, et al.,**

**Defendants.**

**Case No. 22-CV-02080-SPM**

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendants Andrew Bennett, Kailin Bridges, Joel Hepp, and Angie Walter. (Doc. 86). *Pro se* Plaintiff Fredrick Pigram filed a Response. (Doc. 92). Having been fully informed of the issues presented, this Court **GRANTS** Defendants' Motion for Summary Judgment.

### Relevant Factual And Procedural Background

*Pro se* Plaintiff Fredrick Pigram is an inmate who at all relevant times was incarcerated at Menard Correctional Center. (Doc. 9). The instant suit arises from Pigram finding rodent remains in his food. (Doc. 9).

Pigram brought suit on September 6, 2022, against Warden Anthony Wills, L.T. Bennette, L.T. Bridges, SGT Hepp, Nurse Angie Walters, John Doe Head Kitchen Supervisor, and John Does ## 1–3. (Docs. 1, 9). On June 29, 2023, the Court conducted a preliminary review of Pigram's operative Complaint and consolidated

Pigram's claims into three counts: (1) an Eighth Amendment deliberate indifference claim against all Defendants for subjecting Plaintiff to unsanitary conditions of confinement at Menard by serving food trays contaminated with rodent(s) on November 2, 2021; (2) an Eighth Amendment deliberate indifference claim against Defendants Hepp, Bennette, Bridges, Walters, and John Does ## 1–3 for refusing Plaintiff's requests for medical care and/or crisis counseling after he ingested portions of a rodent and became ill on November 2, 2021; and (3) an Eighth Amendment claim against all Defendants for denying Plaintiff access to a nutritionally adequate diet for three days from November 2–5, 2021, by failing to address his ongoing complaints about food contamination while he was sick from ingesting rodent on November 2, 2021. (Doc 12). The Court allowed Counts 1 and 3 to proceed against Defendants Bridges, Bennette, Hepp, Walters, Head Kitchen Supervisor John Doe, and John Does ## 1–3 and Count 2 to proceed against Bridges, Bennette, Hepp, Walters, and John Does ##1–3. (*Id.*). The Court also allowed Wills to remain named as a defendant for the sole purpose of identifying unknown defendants. (*Id.*). On May 14, 2024, the Court allowed Pigram to substitute Cody Mifflin for John Doe 2 and Gage Martin for John Doe 3. (Doc. 48). Because Pigram had not made efforts to identify John Doe 1, the Court dismissed John Doe 1 as a Defendant. (*Id.*). On July 18, 2024, the Court dismissed Head Kitchen Supervisor John Doe as a Defendant because Pigram had not identified him, and because all unknown defendants had been identified or dismissed, the Court dismissed Wills as a Defendant. (Doc. 62). After Defendants Bennett, Walter, Bridges, and Hepp moved for partial summary judgment for failure

to exhaust administrative remedies, the Court dismissed Count 1 against Walter. (Docs. 36, 69). After Pigram moved to voluntarily dismiss Defendants Martin and Mifflin, the Court dismissed Martin and Mifflin without prejudice. (Docs. 67, 73).

The remaining claims are as follows: Count 1 proceeds against Bennette, Bridges, and Hepp; Count 2 proceeds against Hepp, Bennette, Bridges, and Walters; and Count 3 proceeds against Hepp, Bennette, Bridges, and Walters. (*See* Docs. 12, 48, 62, 69, 73). The instant motion was filed on November 18, 2025, (Doc. 86), and Pigram responded on January 21, 2026, (Doc. 92).

The following facts are recited in the light most favorable to Pigram, the non-moving party. *See Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); FED. R. CIV. P. 56(a)) ("On summary judgment we must take the facts in the light most favorable to the non-moving party and grant summary judgment only if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'").

On November 2, 2021, Pigram found rodent remains mixed and blended into his partially consumed food. (Doc. 86-1, pp. 11–13). He spit out his food and showed the rodent remains to Mifflin, who said that he would notify a sergeant. (*Id.*, p. 14). Sgt. Hepp came and saw the rodent remains, and Pigram requested medical care. (*Id.*, p. 14). Sgt. Hepp said that he would notify a lieutenant. (*Id.*, pp. 14–15). Lts. Bennett and Bridges came to Pigram's cell, and he told them about the rodent

remains and requested medical care. (*Id.*, p. 15). Lt. Bennett told Pigram that that they had "got enough trays to process the evidence," and he would pull the inmates to see the crisis team, a mental health team. (*Id.*, pp. 15–16). Lt. Bridges said that a nurse would come to see Pigram. (*Id.*, p. 16).

Nurse Walter came and saw Pigram, and he told her that he ate a rat and needed to be tested for Rabies. (*Id.*, 16). She told him that she was not asking questions, and that it was cooked well, so he did not have anything to worry about. (*Id.*, pp. 16–17).

That day, Pigram experienced stomach pains, diarrhea, and nausea. (*Id.*, p. 18). He verbally requested and submitted a written request for a sick call. (*Id.*, p. 17). He did not ask Nurse Walters for medical care related to this incident. (*Id.*, pp. 29–30).

Between November 3 and 5, Pigram received three meals per day, but he refused to eat any of them. (*Id.*, pp. 19–21). After he resumed eating the meals provided, he would check eat tray for rodent parts, and he did not find any. (*Id.*, p. 21).

Pigram saw a mental health professional sometime after November 5, 2021. (*Id.*, p. 24).

## Applicable Law And Legal Standards

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014)

(quoting FED. R. CIV. P. 56(a)). After the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No issue remains for trial, however, if "sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008) (quoting *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008)). The non-movant cannot simply rely on its pleadings; the non-movant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 998 F.2d 391, 394 (7th Cir. 1993), *cert. denied*, 510 U.S. 1111 (1994); *Celotex*, 477 U.S. at 323–24).

## ANALYSIS

### I. Deliberate Indifference Standard

"A 'deliberate indifference' violation has two components, one objective and one subjective." *Balsewicz v. Pawlyk*, 963 F.3d 650, 654 (7th Cir. 2020), *as amended* (July 2, 2020). "The objective component is that the prisoner must have been exposed to a harm that was objectively serious" and the "[t]he subjective component is that the prison official must have known of and disregarded an excessive risk to the inmate's health or safety." *Id.* at 654–55 (citing *Farmer* at 834, 837–88; *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020)). Mere negligence is not enough to establish a Defendant's deliberate indifference. *See Davidson v. Cannon*, 474 U.S. 344, 347–48 (1986). In fact, even gross negligence is insufficient. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Instead, deliberate indifference is comparable to criminal recklessness. *Thomas v. Blackard,* 2 F.4th 716 (7th Cir. 2021). "'Reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002) (quoting *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999)).

### II. Count I

Pigram alleges that he received a single meal that was contaminated with rodent parts, and he brought this lawsuit against multiple people who responded to the incident. (Doc. 86-1, pp. 11–16). Both facts are independently fatal to this claim.

First, "[a]lthough inmates are constitutionally required to receive adequate food, one incident of finding rodent parts in a meal, though most unfortunate, does

not rise to the level of a constitutional violation." *Jackson v. Lang*, No. 09-CV-05123-EEB, 2010 WL 3210762, at *1 (N.D. Ill. Aug. 10, 2010); *see Booker v. Wills*, No. 24-CV-02382-DWD, 2025 WL 815374, at *3 (S.D. Ill. Mar. 13, 2025) (food contaminated with bugs on single occasion does not rise to level of Constitutional violation); *Walker v. Brookhart*, No. 22-CV-01162-SPM, 2023 WL 3346928, at *5 (S.D. Ill. May 10, 2023) (single incident of "bowl of oatmeal containing rat feces" did not state claim); *Wassil v. Casto*, No. 13-CV-06020-RCC, 2014 WL 988479, at *11 (S.D. W.Va. March 12, 2014) (although "the presence of a dead rodent in Plaintiffs' food is revolting, this incident does not objectively constitute a denial of the 'minimal civilized measure of life's necessities.'"). Although Pigram was not the only inmate who received contaminated food on November 2, 2021, *see Randall v. Schoenbeck*, 22-CV-02146-MAB (Doc. 1), the rodent contamination incident was isolated to a single meal at the prison, *see George v. King*, 837 F.2d 705, 707 (5th Cir. 1988) ("a single incident of unintended food poisoning, whether suffered by one or many prisoners at an institution, does not constitute a violation of the constitutional rights of the affected prisoners").

Pigram has identified that there was a 2023 incident at Menard where multiple inmates received breakfast trays with weevils in the food. S*ee Gaston v. Wills*, 24-CV-02529-SMY (Doc. 1); *Booker v. Wills*, 24-CV-02382-DWD (Doc. 10); *Torres v. McLanahan*, 24-CV-01455-MAB (Doc. 48); *Lindsey v. McClanahan*, 24-CV-02290-RJD (Doc. 1). This incident, however, with a different pest and occurring more than a year after the rodent parts incident, demonstrates merely a second isolated incident as opposed to an ongoing, unremedied problem that could rise to the level of

a Constitutional violation. Similarly, although Pigram has also identified two incidents where Menard staff tampered with a specific inmate's food, *see Roberson v. Wills*, 21-CV-01362-DWD (Doc. 26); *Hampton v. Lashbrook*, 17-CV-00936-DRH-RJD (Doc. 25), these incidents do not demonstrate that the rodent problem at issue in this case was ongoing.

Second, the remaining Defendants participated in responding to the incident; Pigram does not provide evidence that they were responsible for preparing or distributing the food. Because the Defendants were not involved with the food until after Pigram ate it, they cannot be said to "have known of and disregarded an excessive risk to the inmate's health or safety." *Balsewicz*, 963 F.3d at 654–65.

## II. Count II

Pigram alleges that he did not receive appropriate medical care after he ingested portions of a rat. Specifically, he claims that he should have been evaluated for the Hanta virus and received mental health treatment because he was experiencing stomach pains, diarrhea, and nausea. (Doc. 81-1, p. 18; Doc. 92, pp. 16–21).

As an initial matter, Pigram has not put forward any evidence that supports his current claim that he was at risk of contradicting Hanta virus from cooked rodent, or his previous claim that he was at risk of contradicting Rabies from cooked rodent. Pigram has provided a pamphlet on Hanta virus and an "AI overview" of the symptom, but neither exhibit supports Pigram's claim that he could contract Hanta

virus from cooked rodent.[1] (Doc 92, pp. 41–43). In fact, the pamphlet explains that it is contracted by breathing in dust contaminated with rodent urine, droppings, or nesting material. (*Id.*, p. 41).

As to the physical symptoms that Pigram experienced, "[p]rison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). A medical need is serious when it "has been diagnosed by a physician as mandating treatment," or it "is so obvious that even a lay person would perceive the need for a doctor's attention." *Id.* at 653. Stomach pains, diarrhea, and nausea, although certainly unpleasant, generally do not rise to the level of a serious medical need. *See Willis v. Pfister*, No. 18-CV-00333-SCS, 2024 WL 216672, at *9 (N.D. Ill. Jan. 19, 2024) ("vomiting isn't an objectively serious medical condition unless it is unusually severe"). Here, Pigram's allegations that he experienced these symptoms for, at most, a few days falls well within the type of gastrointestinal discomfort that is unpleasant but not medically severe. As such, it cannot support an Eighth Amendment violation.

Similarly, although Pigram has demonstrated that he was upset following the incident and requested a that he immediately meet with the crisis intervention team, he has not put forward evidence that his mental condition was so serious that the few days delay in mental health treatment was violative of the Constitution.

---

[1] Because these materials do not support Pigram's claim, the Court need not consider whether they are appropriate evidence for summary judgment.

## III. Count III

Plaintiff alleges that he was denied access to a nutritionally adequate diet from November 2 until November 5, 2021. During this time, Pigram received three meals per day, but he refused to eat any of them. (*Id*., pp. 19–21). After he resumed eating the meals provided, he would check every tray for rodent parts, and he did not find any. (*Id*., p. 21).

"The Constitution mandates that prison officials provide inmates with 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (quoting *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir.1985)). Pigram, however, has not alleged that there was anything wrong with the food provided, he alleged that he refused it. His decision to refuse food trays for a few days is not attributable to these Defendants, so it cannot support an Eighth Amendment claim against them.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 86) is **GRANTED**. This action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: September 24, 2026**

**STEPHEN P. McGLYNN**
**U.S. District Judge**